UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES STEWART                                                CIVIL ACTION

VERSUS                                                         NO. 13-4759-DEK

KIM WARNER, ET AL.

## ORDER AND REASONS

Plaintiff, Charles Stewart, a state inmate, filed this civil action pursuant to 42 U.S.C. § 1983. He sued Kim Warner, the Director of the Mental Health Department at the B.B. "Sixty" Rayburn Correctional Center, and Gina Zulli, the Assistant Director of that department. In this lawsuit, plaintiff claims that the defendants wrongly placed and kept him on suicide watch where he was subjected to undue deprivations. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

### I.  Plaintiff's Allegations

In his complaint, plaintiff makes the following allegations. In June of 2012, he was threatened with harm by security officers at the prison. Because he felt he was in danger, he "smeared feces all over his cell in order to prevent security from retaliating against him."[2] Immediately thereafter, Warner placed plaintiff on "suicide watch" despite the fact that he had not made any threats to commit suicide. The following day, he "once again smeared feces all over the walls of his cell in order to prevent security from carrying out threats of physical harm against him."[3]

---

[1]  Rec. Doc. 26.

[2]  Rec. Doc. 1-1, p. 2.

[3]  Rec. Doc. 1-1, p. 2.

The suicide watch was therefore enhanced for a brief period by handcuffing him and shackling him to the bed.  He opines that this enhancement was retaliatory in that he still was making no threats to harm himself.

Plaintiff also complains about the general conditions of his confinement on suicide watch.  Specifically, he alleges that he was deprived of a mattress from 5:00 a.m. to 8:00 p.m. each day and allowed nothing in his cell other than a paper gown.  He states that due to having "to sit and lie on a dirty iron bunk, his body became severally [sic] infected with boils" and he "began to suffer from chronic pain in his neck, arm, and shoulder."[4]  He also alleges that he was not allowed to receive legal mail while on suicide watch and, as a result, he had a federal lawsuit summarily dismissed in part.

## II.  Defendants' Motion

The defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5]  However, because the defendants had previously filed an answer,[6] the Court will construe the motion as one for judgment on the pleadings pursuant to Rule 12(c).  See Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).  Plaintiff has opposed the defendants' motion.[7]

---

[4]   Rec. Doc. 1-1, p. 3.

[5]   Rec. Doc. 22.

[6]   Rec. Doc. 19.

[7]   Rec. Doc. 24.

"A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6)." In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209-10 (5th Cir. 2010). The United States Fifth Circuit Court of Appeals has explained:

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.

Id. at 210 (citations, quotation marks, and brackets omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

In their motion, the defendants argue that the claims against them must be dismissed because they are entitled to qualified immunity. Before turning to the specifics of that argument, the Court must make a preliminary observation. The defendants' motion is premised on an assumption that plaintiff is asserting claims against them in only their individual capacities and only for monetary

3

damages. In his opposition to the defendants' motion, plaintiff clarifies that he is also suing the defendants in their official capacities and for injunctive relief. The United States Fifth Circuit Court of Appeals has held that, when a district court is considering a motion to dismiss in a case filed by a *pro se* plaintiff, the court must consider the "complaint under the less stringent standards applicable to *pro se* litigants." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). In such cases, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Id. Therefore, a *pro se* litigant's supplemental filings which embellish the original complaint's averments may appropriately be considered when ruling on a motion to dismiss. Id.

However, even when the additional allegations in plaintiff's opposition are considered as amendments to the complaint, they do not ultimately aid him. It is true that "the personal defense of qualified immunity does not apply to official-capacity claims," Stallworth v. Slaughter, 436 Fed. App'x 337, 340 (5th Cir. 2011); it is also true that qualified immunity does not extend to suits for injunctive relief, Chrissy F. by Medley v. Mississippi Department of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991). Nevertheless, plaintiff's claims against the defendants in their official capacities and for injunctive relief fail for other reasons.

To the extent that plaintiff is seeking monetary damages against the defendants in their official capacities, any such claim clearly must be dismissed. The defendants are state employees working at the B.B. "Sixty" Rayburn Correctional Center, a prison operated by the Louisiana Department of Public Safety and Corrections. See, e.g., Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). State employees sued

in their official capacities for monetary damages simply are not considered "persons" subject to suit under 42 U.S.C. § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union v. Blanco, 523 F. Supp. 2d 476, 479 (E.D. La. 2007); Tyson v. Reed, Civ. Action No. 09-7619, 2010 WL 360362, at *4 (E.D. La. Jan. 21, 2010); Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL 653043, at *6 (E.D. La. Jan. 21, 2009); Demouchet, 2008 WL 2018294, at *3.  Additionally, because a claim against a state employee in her official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment.  Williams v. Thomas, 169 Fed. App'x 285, 286 (5th Cir. 2006); Tyson, 2010 WL 360362, at *4; Searls, 2009 WL 653043, at *6; Demouchet, 2008 WL 2018294, at *3.  For these reasons, plaintiff's claims against the defendants in their official capacities  for monetary damages are hereby dismissed with prejudice as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief pursuant to this Court's screening authority.[8]

---

[8] Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Further, to the extent that plaintiff is suing the defendants in any capacity for injunctive relief, those claims likewise fail. Plaintiff's claims concern his placement on suicide watch and the conditions he endured while in that placement. However, he was released from suicide watch on September 3, 2012, and therefore his claims for injunctive relief must be dismissed as moot. See Haralson v. Campuzano, 356 Fed. App'x 692, 695-96 (5th Cir. 2009); Rivera v. Dawson, No. 05-41565, 2007 WL 1223914 (5th Cir. Apr. 25, 2007); Tamfu v. Ashcroft, No. 02-10502, 2002 WL 31689212 (5th Cir. Oct. 30, 2002); Ashford v. Gusman, Civ. Action No. 12-87, 2012 WL 1019830, at *5 (E.D. La. Feb. 22, 2012), adopted, 2012 WL 1019170 (E.D. La. Mar. 26, 2012).

Turning now to the defendants' motion, the Court must next address the defendants' argument that they are entitled to qualified immunity with respect to the claims asserted against them in their individual capacities for monetary damages. Where, as here, the qualified immunity defense has been raised by the defendants, the burden shifts to the plaintiff to rebut that defense. Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014).

---

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

Concerning qualified immunity, the United States Fifth Circuit Court of Appeals has explained:

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate. Therefore, a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. A court has discretion to decide which prong to consider first.

Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013), cert. denied, 134 S. Ct. 1935 (2014).

According to the complaint, defendant Warner made the initial decision to place plaintiff on suicide watch after he smeared his feces "all over his cell." The Court has no hesitation in concluding that she is entitled to qualified immunity with respect to that decision and, relatedly, to the decision to briefly place him on "Extreme Suicide Watch" after he repeated that same conduct while on "Standard Suicide Watch." Although plaintiff alleges that he disclaimed any intent to commit suicide, he was clearly acting irrationally. In light of his actions, this Court simply cannot say that Warner's decisions were even facially unreasonable, much less unconstitutional. On the contrary, someone in Warner's position would be expected to err on the side of caution in such matters. Indeed, if she had ignored plaintiff's actions and he then committed suicide, she might well have been liable for failing to take preventative measures. See, e.g., Lewis v. Parish of Terrebonne, 894 F.2d 142, 145-46 (5th Cir. 1990).

As an aside, the Court notes that plaintiff argues that it would have been more appropriate to place him on "Mental Health Observation" rather than "Standard Suicide Watch." However, that is a professional judgment appropriately left to mental health professionals, and this Court will not

7

question a decision which afforded greater protections to a prisoner acting irrationally. Even if the Court assumes that prison policies provide guidelines for those differing placements, and even if Warner's decision ran afoul of those policies, that would be of no moment, because "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009).

The Court also notes that it is unswayed by plaintiff's conclusory allegation that Warner's decisions stemmed from a retaliatory motive. As the United States Fifth Circuit Court of Appeals has explained:

> A prisoner alleging retaliation must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006). Retaliation "is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." Id. at 686. To establish an intent to retaliate, an "inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted). To satisfy the causation element, a prisoner must show that the adverse act would not have occurred "but for the retaliatory motive." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).

Garner v. Moore, 536 Fed. App'x 446, 449-50 (5th Cir. 2013).

Here, plaintiff does not allege that the purported retaliation stemmed from the exercise of a constitutional right; rather, he alleges that it was because he was "involved in a physical altercation with a member of security at Rayburn Correctional Center"[9] and because he "smeared feces all over his cell."[10] Obviously, inmates do not have a constitutional right to engage in physical altercations

---

[9] Rec. Doc. 1-1, p. 1.

[10] Rec. Doc. 1-1, p. 2.

with guards. Moreover, plaintiff does not identify, and this Court has not found, any support for a contention that a prisoner's smearing of his own feces is a form of protected speech under the First Amendment or is in any other way subject to constitutional protections. Further, in any event, he cannot establish that he would not have been placed on suicide watch "but for" the purportedly retaliatory motive; on the contrary, the fact that plaintiff was acting irrationally was itself an adequate basis for placing him on suicide watch. For these reasons, the Court rejects plaintiff's retaliation claim.[11]

Lastly, even if plaintiff's claim is construed as one arguing that he was denied due process by the decision to place him on suicide with its restrictive conditions, the Court cannot say that the law clearly establishes that due process was required. On the contrary, when faced with a similar claim in <u>Lewis v. Olds</u>, Civ. Action No. 4:08-CV-495, 2009 WL 186226 (N.D. Tex. Jan. 26, 2009), United States District Judge Terry R. Means held:

> Lewis complains that defendant Olds ordered him to be placed in a solitary suicide-watch cell without probable cause, which is treated as a claim that he was placed in administrative segregation without due process of law. The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." Thus, the Court must first determine whether a property or liberty interest exists that is entitled to due-process protection. But, an inmate has neither a protected property nor liberty interest in his custody classification. Furthermore, a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In <u>Sandin v. Connor,</u> [515 U.S. 472 (1995),] the Court held that a prisoner's "discipline in segregated confinement did not present

---

[11] It must further be noted that plaintiff concedes in his opposition that dismissal of the retaliation claim "may be appropriate as plaintiff does recognize an inability to prevail on [it]." Rec. Doc. 24, p. 21.

9

>  the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  In light of Sandin, the Court of Appeals for the Fifth Circuit held that, "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest."  Controlled by these precedents, Lewis's placement in suicide-watch segregation as stated in the complaint does not rise to the level of an atypical and significant hardship.  Thus, Lewis's due-process claim based upon the suicide-watch cell placement has no arguable basis in law, and must be dismissed.

Id. at *1 (footnotes omitted).  Accord Morris v. Winn Correctional Center, No. 08-CV-1488, 2009 WL 2391844, at *2-3 (W.D. La. Aug. 4, 2009); Starks v. Couch, Civ. Action No. 08-cv-407, 2009 WL 331357, at *2 (S.D. Ill. Feb. 11, 2009) ("Starks has not stated a claim for a due process ... violation because there is no constitutional right to avoid being placed on suicide watch."); Rogers v. Paquet, No. 3:01-CV-0969, 2001 WL 1148256, at *3 (N.D. Tex. Sept. 18, 2001).

For all of the foregoing reasons, the Court finds that Warner is entitled to qualified immunity with respect to the claim that she violated plaintiff's constitutional rights by placing him on "Standard Suicide Watch" and then briefly on "Extreme Suicide Watch."

Plaintiff's claim against Warner and Zulli for keeping him on suicide watch for a prolonged period of time, i.e. for approximately eighty-four days, fares no better.  As the defendants note in their motion, the law does not clearly establish a limit to the amount of time that an inmate can be kept on suicide watch; therefore, defendants could have reasonably believed that their actions in keeping plaintiff on suicide watch for that period of time was legal.  That conclusion is not changed by the mere fact that plaintiff repeatedly told them that he was not in fact suicidal; obviously, a person's statements are not conclusive evidence of his true intentions, and an inmate could in fact be suicidal even while disclaiming any intent to harm himself.  Moreover, plaintiff's allegation that the defendants' decision to extend his stay on suicide watch stemmed from a retaliatory motive again

10

fails. As already noted, plaintiff's allegations of a retaliatory motive are entirely conclusory and, in any event, the decision clearly was not to exact revenge against him for exercising any identifiable constitutional right.

Next, to the extent that plaintiff is arguing that the conditions of his confinement on suicide watch constituted cruel and unusual punishment in violation of the Eighth Amendment, that claim must also be dismissed. Two requirements must be met before liability will arise for constitutional violations relating to conditions of confinement. First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To rise to the level of a constitutional violation, the conditions must be so serious as to deprive the prisoner of the "minimal civilized measure of life's necessities." Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995) (quotation marks omitted).

Second, the inmate must show that a prison official was deliberately indifferent to the inmate's health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez v. Manthey, 589 F.3d 764, 770 (5th Cir. 2009).

As an initial matter, plaintiff does not allege that either Warner or Zulli, the sole defendants herein, were in any way personally responsible for the conditions of confinement on suicide watch.[12]

---

[12] "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

Moreover, even if they were, courts have repeatedly held that deprivations similar to the ones plaintiff alleges do not violate the Eighth Amendment. See, e.g., Williams v. Delo, 49 F.3d 442, 445-46 (8th Cir. 1995) ("[T]here is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding."); Alex v. Stalder, 225 Fed. App'x 313 (5th Cir. 2007) (taking inmate's mattress during daytime hours does not violate Eighth Amendment); Hadwin v. Stalder, 196 Fed. App'x 293, 294 (5th Cir. 2006) (same); Barbosa v. McCann, No. 08 C 5012, 2009 WL 2913488, at *4 (N.D. Ill. Sept. 8, 2009) ("Plaintiff has no constitutional right to have a stool or other furniture on which to sit in his cell.").[13]

Lastly, plaintiff claims that he was denied his First Amendment right of access to the courts. With respect to this claim, he alleges that he was not allowed to receive legal mail or perform legal work while on suicide watch. He claims that, as a result of this deprivation, one of his lawsuits in the United States District Court for the Middle District of Louisiana, Stewart v. Cain, Civ. Action No. 11-403, was dismissed in part. However, a prisoner's right of access to the courts has been violated only if his position as a litigant was actually prejudiced. Brewster v. Dretke, 587 F.3d 764, 769 (5th Cir. 2009); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States,

---

[13] The Court additionally notes that plaintiff's allegations that he developed physical ailments due to the deprivation of a mattress do not change this result. He acknowledges that, when those complications developed, he received medical treatment including pain medication. Rec. Doc. 1-1, p. 3. Therefore, prison officials were not deliberately indifferent to any serious medical needs which resulted from his confinement on suicide watch.
    The Court also notes that plaintiff's allegations that, pursuant to prison policy, an inmate is not be deprived of a mattress for more than twenty days in a thirty-day period are of no moment. As already noted, even if a policy exists, "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." Samford v. Dretke, 562 F.3d 674, 681 (5th Cir. 2009).

160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).

Here, plaintiff cannot show that any prejudice resulted. According to the instant complaint, plaintiff was on suicide watch only from June 11, 2012, through September 3, 2012. It is true that, in his Middle District case, the defendants filed a motion to dismiss which was granted in part during that period.[14] However, the records of that case available on PACER show that the motion was filed on December 14, 2011, and plaintiff filed an opposition to that motion on or about December 28, 2011, long before he was even placed on suicide watch. A Report and Recommendation was then issued by the Magistrate Judge on July 6, 2012, and adopted by the District Judge on August 6, 2012. No objections to Report and Recommendation were filed, presumably because plaintiff was on suicide watch in July and August and, therefore, allegedly unable to receive legal mail and work on the case. However, even after being released from suicide watch, he neither notified the court that he had been unable to file objections to the Report and Recommendation in a timely fashion due to those circumstances nor asked for reconsideration of the District Judge's ruling on that basis. In any event, all of the dismissed claims were in fact properly dismissed,[15] and so any objections, even

---

[14] The dismissal was only partial; the case itself remained pending for years thereafter, only recently concluding in April of 2014.

[15] The claims against two defendants for deprivation of medical care were dismissed because plaintiff's allegation that he was denied medical care for "scrapes and bruises" did not rise to the level of a constitutional violation. A claim against another defendant for verbal abuse was dismissed because verbal abuse implicates no constitutional right and, therefore, is not actionable. The claims against Warden Burl Cain were dismissed because plaintiff failed to properly allege a claim for supervisory liability and because, although Cain denied plaintiff's grievance, plaintiff had no constitutional right to have his grievance resolved to his satisfaction. A claim against another defendant was dismissed because he was never served in accordance with the Federal Rules of Civil Procedure. Lastly, the court declined to exercise supplemental jurisdiction over plaintiff's state law claims.

if they had been filed, would have had no conceivable merit. Therefore, plaintiff cannot show the prejudice required to support an "access to courts" claim.[16]

Accordingly, for all of the foregoing reasons,

**IT IS ORDERED** that the defendants' motion, Rec. Doc. 22, is **GRANTED** and that plaintiff's claims against Kim Warner and Gina Zulli in their individual capacities for monetary damages are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's claims against Kim Warner and Gina Zulli in their official capacities for monetary damages are hereby **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that plaintiff's claims for injunctive relief are **DISMISSED WITH PREJUDICE** as moot.

New Orleans, Louisiana, this fourteenth day of July, 2014.

                                              **DANIEL E. KNOWLES, III**
                                              **UNITED STATES MAGISTRATE JUDGE**

---

[16] It must further be noted that plaintiff concedes in his opposition that dismissal of the "access to courts" claim "may be appropriate as plaintiff does recognize an inability to prevail on [it]." Rec. Doc. 24, p. 21.